**Clinton JONES, Appellant,**

v.

**The TRAVELERS INSURANCE CO.,**
**Appellee.**

**No. 6660.**

Court of Civil Appeals of Texas.

Beaumont.

Jan. 9, 1964.

Rehearing Denied Feb. 5, 1964.

Bates & Brock, David J. Nagle, Houston, for appellant.

Strong, Pipkin, Strong & Nelson, Beaumont, for appellee.

STEPHENSON, Justice.

This is a suit brought under the Workmen's Compensation Law of the State of Texas. Judgment was rendered for plaintiff, based upon jury findings, for total temporary incapacity for 46 weeks and permanent partial incapacity. The parties will be referred to here as they were in the trial court.

It was stipulated that plaintiff had an average weekly wage of $91.40, and the jury found his wage earning capacity to be $81.00 per week during partial inca-

pacity. Plaintiff contends the trial court should have disregarded this finding of the jury, and should have found as a matter of law that plaintiff had only a nominal wage earning capacity. We interpret this to be a "no evidence" question, which we must determine by considering only the evidence favorable to the jury verdict, and disregarding all other.

Plaintiff contends that he received a back injury, which, through the mechanism of accompanying pain and anxiety, aggravated a condition of hypertension or high blood pressure further aggravating a pre-existing condition of arteriosclerosis, which resulted in a blockage of the artery in his right thigh which ultimately resulted in the loss of plaintiff's right leg. The date of the injury was May 15, 1959, and the operation to amputate plaintiff's leg was May 18, 1960. It was defendant's theory of the case that there was no connection between the back injury and the high blood pressure which brought on the amputation of the leg.

Dr. Thomas Lombardo testified he examined the plaintiff and his diagnosis was Hypertensive Cardiovascular disease. He testified this condition was not related to the incident on May 15, 1959 when the plaintiff felt back pain on bending. He also testified the event described, that is, bending and pain, could not have accelerated or aggravated the condition plaintiff had.

Dr. M. E. Faulk, Jr., testified he examined plaintiff in March, 1960. In his opinion plaintiff had recovered from the muscle sprain he received May 15, 1959. This doctor said he found periferal arteriosclerosis and moderate hypertension. He was asked the following:

"Q. Then, do you have an opinion as to whether this instant that he has described to you of May 15, 1959, brought about this High Blood Pressure?

"A. No. His Blood Pressure was not particularly high, at the time I examined him. And, it was primarily a matter of Arterial Sclerosis. But, that's as I say, a Metabolic disease, and not the result of an injury.

"Q. Well, could the incident he described to you, May 15, 1959, and assuming further that the incident was that he stooped over to pick up a hose and felt a pain in his back, or a catch in his back, or some trouble in his back, do you have an opinion as to whether that in any way aggravated this Arterial Sclerosis?

"A. I don't see how it could.

"Q. Or, changed it in any way?

"A. No.

"Q. Incited it? Flared it—?

"A. As I say, this is not a traumatic thing, this is a Metabolic thing. This is an alteration of the body's method of handling fat."

◼ It is apparent from the manner in which the jury answered the special issues submitted to them, that they found no connection between the back injury of May 15, 1959 and the loss of plaintiff's leg. The evidence supported the finding of the jury and the point is overruled.

◼ The jury found that plaintiff had sustained a compensable injury in 1951, which contributed 5% to his present incapacity. The jury also found that plaintiff sustained a compensable injury in 1956 which contributed 5% to his present incapacity. However, the trial court, over plaintiff's objection, also submitted the following issue:

"If you have answered Special Issue No. 16A 'It did contribute', or Special Issue No. 18A 'It did contribute', then

in either of such events answer the following:

## "SPECIAL ISSUE NO. 20

"From a preponderance of the evidence what percentage of plaintiff's incapacity, if any, after May 15, 1959 was caused solely by the injury, if any, of May 15, 1959?

"Answer by stating a percentage, or answer 'None'.

"Answer: 5%"

The submission of this last issue was improper under the circumstances of this case. The Supreme Court of Texas recently held in Rufus Sowell v. The Travelers Insurance Company, reported on page 59, Volume 7, of The Texas Supreme Court Journal, that in a case in which the evidence shows a previously existing disease or condition, the trial court cannot submit an issue to the jury to determine the percentage of incapacity "solely" caused by the last injury. The Supreme Court says the issues must determine the percentage of incapacity caused by the prior compensable injury or injuries. The trial court in the present case secured a finding on each of the prior compensable injuries and all of the information is available in order to enter the correct judgment. The last special issue should have been disregarded by the court as surplusage. The plaintiff will recover 90% of 60% of the difference between $91.40 and $81.00, for a period of 300 weeks, which is $1,686.00, less the usual discount, for partial permanent incapacity.

■ Plaintiff has two points of error related to the amount of disability contending the findings of the jury that plaintiff's incapacity was temporary and that the duration of plaintiff's total incapacity was 46 weeks, were each contrary to the overwhelming preponderance of the evidence. This raises a question of fact for this court to determine by considering the entire record including the evidence supporting these findings of the jury and the evidence contrary to such findings. Considering all of the evidence on these points we cannot say these findings of the jury were so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. King v. King, 150 Tex. 662, 244 S.W. 2d 660.

■ Plaintiff complains of the action of the trial court in permitting defendant to introduce in evidence certain cross-interrogatories of Dr. W. J. Jinkins, Jr., on the ground that such cross-interrogatories were leading. Dr. Jinkins was selected by plaintiff voluntarily for examination and treatment. Counsel for plaintiff prepared direct interrogatories and counsel for defendant prepared the cross-interrogatories. On the trial of the case plaintiff offered in evidence the direct interrogatories, making Dr. Jinkins a witness for the plaintiff. It was entirely proper for the defendant to then offer in evidence the cross-interrogatories of Dr. Jinkins, even though the questions propounded may have been leading. The prohibition upon leading questions has no application to cross-examination. If a rule is established that leading questions cannot be asked on cross-examination in a deposition, a very valuable right would be taken from litigants. It would also mean a party to a suit could place himself in a better position by taking the testimony of a witness through deposition than by placing the witness on the stand. If such party could deprive his adversary of the right to ask leading questions on cross-examination, merely by taking a deposition of such witness, the result of such a rule would be both unfair and ridiculous.

■ The trial court permitted a witness called by defendant to testify that plaintiff was paid "sick-pay" following the injury made the basis of this suit. Plaintiff alleged manifest hardship and asked for a lump sum payment in his petition. Counsel for plaintiff asked the court to limit this testimony about payment of "sick-pay" to the issue of manifest hardship,

which was denied by the court. The plaintiff had testified he knew the difference between an injury on the job and sick-pay. This testimony was therefore admissible both on the issue of manifest hardship and issue as to whether the injury sued upon was the producing cause of his incapacity. The acceptance of sick-pay by plaintiff is some evidence in the nature of an admission as to the cause to which plaintiff attributed his incapacity. In any event, we feel the error, if any was made, was harmless. Rule 434, Texas Rules of Civil Procedure.

The other points are considered and overruled.

Judgment reformed and affirmed.