**CONSOLIDATED CASUALTY INSURANCE COMPANY, Appellant,**

**v.**

**George W. JACKSON, Sr., Appellee.**

**No. 2.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Sept. 13, 1967.

Rehearing Denied Oct. 11, 1967.

James R. Coffee, Houston, and Baker, Botts, Shepherd, & Coates, Houston, of counsel, for appellant.

Phelps, Kilgarlin & Snell, and Jim S. Phelps, Houston, for appellee.

TUNKS, Chief Justice.

This is a Workman's Compensation case.

The principal question involved is the construction of Article 8306, Section 12c of the Texas Workmen's Compensation Act.

In the trial court the jury found that an accidental injury sustained by the appellee (hereinafter called plaintiff) on May 22, 1959, was a producing cause of 96 weeks of total incapacity followed by permanent partial incapacity. The jury found that before the May 22, 1959 injury, plaintiff had an average daily wage of $26.00 and that during the period of plaintiff's partial incapacity, he had an average weekly wage earning capacity of $100.00. The difference between the average weekly wage before the injury (computed under Article 8309, Section 1, at $150.00) and the wage earning capacity during the period of partial incapacity, was thus found to be $50.00 per week.

Special Issue No. 11 submitted to the jury was in the following language: "Do you find from a preponderance of the evidence that the prior injury of June 14, 1952, has not contributed to the incapacity, if any, of George W. Jackson?"

To such issue the jury answered: "It has contributed."

Special Issue No. 12 was in the following language: "If you have answered Special Issue No. 11 'It has contributed', and only in that event, then answer: SPECIAL

ISSUE NO. 12, "What do you find, from a preponderance of the evidence to be the percentage that such prior injury has contributed, if any, to plaintiff's incapacity, if any?"

To such issue the jury answered: "7%."

In Special Issues Nos. 13 through 18, the court, in similarly worded issues, made inquiries concerning three other injuries sustained by the plaintiff before May 22, 1959. As to two of those other three prior injuries, the jury found that each had contributed 7% to the plaintiff's incapacity and that the third had so contributed 4%, thus the total contribution from the four prior injuries "to plaintiff's incapacity" was found to be 25%.

Not only the May 22, 1959 injury, but also all four of the prior injuries sustained by plaintiff were injuries of a character described in the Texas Workmen's Compensation Act as general injuries.

The May 22, 1959 injury and each of the four prior injuries inquired about were sustained by plaintiff while within the scope and course of his employment for Sinclair Refining Company and on the occasion of each of the five injuries, the appellee (hereinafter called defendant) was the compensation carrier for such employer.

The trial court entered judgment for the plaintiff, based upon the jury's verdict and its own finding as to the payment by the defendant of 52 weeks of compensation at $35.00 per week, allowing plaintiff a recovery for 44 weeks of total incapacity at the rate of $35.00 per week and a recovery for 300 weeks for partial incapacity at the rate of $30.00 per week. The judgment of the trial court likewise provided that past due payments should draw interest at the rate of 6% per annum.

The trial court, therefore, disregarded the jury's findings to special issues 11 through 18 which special issues related to plaintiff's prior injuries and the contribution of those injuries to the plaintiff's incapacity.

Neither party here challenges the sufficiency of the evidence to support the jury's verdict. Rather, each party here attacks the substance of the trial court's judgment and seeks to have it reformed, and, as so reformed, affirmed.

As to the controversy between the two parties concerning the construction of Section 12c of the Texas Workmen's Compensation Act, it is the contention of the defendant that the trial court should have given effect to the jury's verdict concerning the contribution to the plaintiff's incapacity made by the prior injuries, and that the compensation rate allowed plaintiff during the 300 week period of partial incapacity should have been in the amount of $7.50 per week. The plaintiff contends first that the trial court correctly disregarded the jury's findings concerning the prior injuries and their contribution to his incapacity, and, alternatively, contends that if those findings be given effect, the compensation rate of the plaintiff during the period of his partial incapacity should be in the amount of $22.50 per week.

We shall first examine the question as to whether or not the jury's findings concerning the prior injuries and their contribution to plaintiff's incapacity shall be given any effect.

■ It is plaintiff's contention that the "second injury defense" is available to the defendant in a Workman's Compensation case only when there are successive compensable specific injuries as those specific injuries are identified in Article 8306, Section 12, Vernon's Annotated Texas Statutes. On the other hand, the defendant contends that where the litigation involves compensation for a general injury, such defense is available on the occasion of plaintiff's having sustained any prior compensable injury, general or specific. As to this controversy, the trial court sustained the position of the plaintiff. We sustain the position of the defendant.

Before 1947, Section 12c, the second injury statute, read as follows: "If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association (Texas Employers' Insurance Association) shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury.

Both parties here agree that in those cases discussing the second injury defense before 1947, it was uniformly held that in a claim for compensation based upon a general injury, the defendant was entitled to show, as a defense, the extent to which a prior compensable injury had contributed to the claimant's incapacity.

In 1947, Section 12c was amended by adding the following language: "[P]rovided that there shall be created a fund known as the 'Second-Injury Fund' hereinafter described, from which an employee who has suffered a subsequent injury shall be compensated for the combined incapacities resulting from both injuries."

At the same time, Section 12c–1 was enacted as follows: "If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye becomes permanently and totally incapacitated through the loss or loss of use of another member or organ, the association shall be liable only for the compensation payable for such second injury provided, however, that in addition to such compensation and after the combination of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for the total permanent incapacity out of the special fund known as 'Second-Injury Fund,' hereafter defined."

At the same time, Section 12c–2 and Section 12c–3 were enacted, but since they merely provided for the manner in which

the second injury fund was to be established and maintained, they are not relevant to this opinion.

Plaintiff cites the case of Second Injury Fund v. Keaton, 162 Tex. 250, 345 S.W.2d 711 (1961) as authority for his position to the effect that, where the claim for incapacity is based on a general injury, no deduction from the incapacity produced should be made because prior compensable injuries contribute to that incapacity. That case was one in which the plaintiff sought to recover from the Second Injury Fund for his permanent partial incapacity produced by a series of injuries, some of which were general and some specific.

The Court simply held that recovery from the Second Injury Fund may be had only in that situation where successive specific injuries produce total incapacity. Certain language of the opinion indicating that Section 12c is limited to specific injuries clearly refers to that portion of Section 12c which creates the cause of action against the Second Injury Fund. It has no reference to that portion of Section 12c which creates the second injury defense.

■ The following authorities support the proposition that where a claim for compensation under the Texas Workmen's Compensation Act is based upon an incapacity of which a general injury was a producing cause, a deduction should be made from that incapacity to the extent that other compensable injuries have contributed to it. Sowell v. Travelers Insurance Co., 374 S.W.2d 412 (Tex.Sup.Ct., 1964); St. Paul Fire & Marine Insurance Co. v. Murphree, 347 S.W. 2d 817 (Tex.Civ.App., Amarillo, 1961, affirmed, 163 Tex. 534, 357 S.W.2d 744); Aetna Casualty & Surety Co. v. Depositer, 393 S.W.2d 822 (Tex.Civ.App., Corpus Christi, 1965), error refused, n. r. e.

■ The judgment must, therefore, be reformed so as to give effect to the jury's findings that the prior compensable general injuries suffered by the plaintiff contributed 25% to his incapacity.

There remains the question as to the formula to be used in determining the amount by which plaintiff's recovery is to be reduced because his prior compensable injuries contribute to his incapacity. The language of that portion of Section 12c creating the defense does not clearly provide an answer to that question. In such a situation, necessitating a judicial construction of the Workmen's Compensation Act, the Texas Supreme Court has uniformly held that the Act should be liberally construed in favor of the injured workman. Goldman v. Torres, 161 Tex. 437, 341 S.W.2d 154 (1960); Texas Employers Insurance Association v. Holmes, 145 Tex. 158, 196 S.W.2d 390; Second Injury Fund v. Keaton (supra).

In the language of Section 12c, the second injury defense is available when the prior injury contributes to "a condition of incapacity." The extent of any "condition of incapacity" which is less than total is, under Section 11 of Article 8306, represented by the dollar and cent figure arrived at by deducting from the plaintiff's average weekly wage before the injury and the amount of his average weekly wage earning capacity after the injury.

■ Plaintiff's partial incapacity stated in terms of dollars and cents, as required by the Act, is $50.00 per week. His prior compensable injuries contributed 25% of that partial incapacity. Under Section 12c defendant is not required to pay compensation for that part of his incapacity contributed by his prior compensable injuries. To give effect to the second injury defense, that $50.00 per week figure must be reduced by 25%. Thus the partial incapacity for which plaintiff is entitled to compensation from defendant is, stated in dollars and cents, $37.50 per week. Sixty percent of $37.50 is $22.50, the weekly compensation rate to which plaintiff is entitled during the compensable period of his partial incapacity.

In Jones v. Travelers Insurance Co., 374 S.W.2d 779, (Tex.Civ.App.) error ref., n. r. e., the jury found that the plaintiff sustained temporary total incapacity followed by permanent partial incapacity. It was stipulated that plaintiff's average weekly wage was $91.40. The jury found that his wage earning capacity, during the period of his partial incapacity, was $81.00. The jury also found that other compensable injuries contributed 10% to his incapacity. Thus, the facts presented the exact question we have here. As to the computation of plaintiff's compensation rate during his partial incapacity, the court said: "The plaintiff will recover 90% of 60% of the difference between $91.40 and $81.00, for a period of 300 weeks, which is $1,686.00, less the usual discount, for partial permanent incapacity."

During the period of plaintiff's total incapacity, his incapacity, stated in dollars and cents, was $150.00 per week—the difference between his average weekly wage of $150.00 before the injury and his average weekly wage earning capacity of no dollars per week for 96 weeks after his injury. Since 60% of $150.00 per week exceeds the maximum compensation rate of $35.00 per week, the court's allowance of the maximum rate during that unpaid portion of the period of his total incapacity is consistent with our computation of his compensation rate during his partial incapacity.

The defendant submits a different proposed formula for computing the compensation rate by which plaintiff is to be paid during the period of his partial incapacity. It is the defendant's contention that the 25% adjustment for contribution from prior injuries should be applied to the $150.00 figure found by the jury to represent the average weekly wage of plaintiff before his May, 1959 injury. If this formula were followed, $37.50 would be deducted from the $150.00, leaving a balance of $112.50. Then, defendant says, there should be deducted from the $112.50, the sum of $100.00, plaintiff's average weekly wage earning capacity, as found by the jury, during his period

of partial incapacity. That would leave a balance of $12.50. Then, by applying the statutory 60% figure to the $12.50 remaining, a weekly compensation rate in the amount of $7.50 would result. Such, says the defendant, is the amount to which the plaintiff is entitled under the jury's verdict during the period of his partial incapacity.

Defendant cites in support of its position the case of Aetna Casualty & Surety Co. v. Depoister, 393 S.W.2d 822 (Tex.Civ.App.), error refused, n. r. e. In that case, the jury found that the accidental injury which was the subject matter of the law suit, was a producing cause of total incapacity. Also, in that case, the jury found that other compensable injuries contributed 12% to the incapacity sustained by plaintiff.

█ There was, in the Depoister case, a question as to the amount of plaintiff's average weekly wage before his injury. The court said: "* * * Nevertheless, the same ultimate result is reached whether we use, as a basis of judgment, an average weekly wage of $80.00 per week, or $126.92.

100% less 12% = 88%
88% of $80.00 = $70.40
60% of $70.40 = $42.24

$42.24 being in excess of $35.00 compensation rate, the judgment was properly calculated at $35.00 per week for 401 weeks * * *" "* * * We feel that our conclusion that the 12% contribution to the present incapacity of appellee by the prior injuries should be deducted from the average weekly wages before computing the compensation rate is supported by the following authorities: Associated Indemnity Corp. v. McGrew, Tex.Comm.App., 138 Tex. 583, 160 S.W.2d 912; Texas Employers' Insurance Ass'n. v. Upshaw, Tex.Civ.App., 329 S.W.2d 144, writ ref., n. r. e; Traders & General Insurance Co. v. Robinson, Tex. Civ.App., 222 S.W.2d 266, writ ref. * * *"

As we have stated above, the use of the figure representing the plaintiff's average weekly wage before injury, during total

incapacity, is the same as the figure representing the extent of his incapacity. Thus, in making the adjustment as to the percentage which his other injuries have contributed to his incapacity, it is proper to use that figure. Such procedure is not inconsistent with that which we here use in computing plaintiff's compensation rate during his partial incapacity. We have carefully examined the authorities on this point cited in the Depoister case and nothing in them is inconsistent with our holding here.

■ The defendant's counsel, in oral argument, suggested as another alternative formula for computation, that the 25% be deducted from the compensation rate, itself. Here that computation would produce the same result as ours during the period of plaintiff's partial incapacity (or in any other situation where the plaintiffs compensation rate was less than the maximum), because deducting 25% from $30.00 per week still results in $22.50 per week. But it would make a difference in the computation of the rate to which plaintiff was entitled during the period of his total incapacity because it would result in the reduction of his compensation rate during such period from $35.00 to $26.25 per week. The court in Aetna Casualty & Surety Co. v. Depoister (supra), cited by defendant, rejected such a proposal as defendant here makes.

■ The use of such suggested formula would be contrary to the rule, noted above, to the effect that the Workmen's Compensation Act should be construed liberally in favor of the injured workman.

We therefore hold that plaintiff is entitled to compensation at the rate of $22.50 per week during the compensable period of his partial incapacity.

■ The parties submitted to the judge, on testimony heard out of the presence of the jury, the question as to the payment by the defendant of part of the accrued compensation. A witness identified as a custodian of the records of defendant was asked to read from the company ledger sheets (not offered in evidence) information as to the number of weeks of compensation paid to plaintiff. Plaintiff's counsel objected on the ground that the ledger sheets themselves were the best evidence. Such objection was overruled and the witness testified that 52 weeks had been paid. The propriety of the trial court's ruling in that respect need not be decided because the record shows that the witness was later asked a direct question as to the amount of compensation paid and, without objection, answered "$1,830.00." This figure exceeds, by $10.00, the allowance for payment made by the trial court.

■ Even if there were error in permitting the witness to read from the ledger sheets, the later testimony as to the amount paid would support the court's findings. The matter was not tried to the jury and under such circumstances it is presumed that the court did not consider any inadmissible evidence in making its findings. Stevens Brothers v. Mills, 336 S.W.2d 921 (Tex.Civ.App.) error ref., n.r.e., Rule 434 Texas Rules of Civil Procedure. The court therefore properly allowed defendant credit for the 52 weeks of compensation which it found had been paid by the defendant.

The defendant asks that the judgment of the trial court be reformed insofar as it allowed a recovery of 6% interest on past due installments of compensation. The transcript shows that after the verdict was received, counsel for defendant tendered to the court a proposed form for judgment. That proposed form for judgment bore the signature of counsel for defendant under the words "approved as to form." That proposed form for judgment had language concerning the allowance of interest in the

exact form which appeared in the final judgment signed by the judge.

The transcript likewise shows that counsel for plaintiff tendered to the court three alternative proposed forms for judgment and that in each of those forms is the same language with reference to interest as ultimately appeared in the signed judgment was used.

█ In a compensation case, the judgment should provide for interest on accrued payments at the rate of 4% per annum, compounded annually. General Accident Fire & Life Assur. Corp. v. Camp., Tex.Civ.App., 348 S.W.2d 782 (no writ history); Texas Employers' Insurance Association v. Elder, 274 S.W.2d 144 (Tex.Civ.App. affirmed, 155 Tex. 27, 282 S.W.2d 371); General Insurance Corp. v. Handy, 267 S.W.2d 622 (Tex.Civ.App.) error ref., n.r.e., Article 8306a Vernon's Annotated Texas Statutes.

█ We do not believe that the plaintiff's counsel in merely approving the form for judgment "as to form" so invited the error on the part of the trial court as to be estopped from here asserting such error. Particularly is this true where both parties are seeking to have the trial court's judgment reformed in such a manner as to comply with the law.

The appellant's point of error in this respect is sustained.

The judgment of the trial court is reformed in such a manner as to provide for the recovery by plaintiff of compensation at the rate of $35.00 per week for 44 weeks, the unpaid portion of his period of total incapacity, to provide for the recovery by plaintiff of $22.50 per week for a period of 300 weeks, the period of his compensable partial incapacity, and for interest at the rate of 4% per annum, compounded annually. As so reformed, the judgment of the trial court is affirmed.

It is further ordered that one-half of the cost of appeal in this case be adjudged against each of the parties.